Joshua Koltun (Bar No. 173040)
Attorney
101 California Street
Suite 2450, No. 500
San Francisco, California 94111
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Defendants
Doe/Klim" and Doe/Skywalker"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ART OF LIVING FOUNDATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1-10, inclusive,<br><br>Defendants. | Case No.: CV 10-5022-LB<br><br>**SPECIAL MOTION TO STRIKE UNDER CAL. C.C.P. 425.16 OF DEFENDANTS DOE/KLIM AND DOE SKYWALKER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 17, 2011<br>Time: 11:00 am<br>Judge: Hon. Laurel Beeler<br>Courtroom: 4 |



Joshua Koltun ATTORNEY

TABLE OF CONTENTS


I. *The Complaint is Subject to a Special Motion to Strike under § 425.16.* ........ 8

A. *Defendants Have Met Their Initial Burden of Showing That the Complaint "Arises from …Free Speech … on a Public Issue."* ........ 8

II. *Plaintiff's Defamation, Trade Libel, or Trade Secret Claims Must Be Stricken* ........ 10

A. *Plaintiff Must Show That Its Claims Are Legally Sufficient and Supported By Admissible Evidence* ........ 10

B. *If the Motion to Dismiss is Granted on the Defamation and Trade Libel Claims, the Motion to Strike Must Necessarily be Granted, but if the Motion to Strike is Denied, Plaintifs Must Make Further Showings, Such as That the The Statements Were False* ........ 11

C. *Plaintiff Cannot Substantiate a Cognizable Trade Secret Claim* ........ 12

1. *Plaintiff Cannot Show That The "Secrets" At Issue Are Not Generally Known Within the Yoga Community* ........ 12

2. *Plaintiff Cannot Show That The "Secrets" Have Independent Economic Value* ........ 13

3. *Plaintiff Cannot Show That It Has Taken Reasonable Efforts to Protect The "Secrets"* ........ 14

4. *Even if Students Had Signed Nondisclosure Policies, Such Policies Here Would Be Void as Contrary to Public Policy and the First Amendment* ........ 14

D. *Defendants Cannot Be Held Liable for the Statements of Third Parties on Their Blogs, Nor Can Either Be Held Liable for the Statements of the Other.* ........ 16




Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

# TABLE OF AUTHORITIES

**Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005)................13

*Barrett v. Rosenthal*, 40 Cal. 4th 33, 57-58 (2006)................16

*Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir. 2003)................16

*Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 953 (1996). ................11

*Bindrim v. Mitchell*, 92 Cal.App.3d 61, 69 (1979) ................15

*Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996). ................14

*Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 650-651 (1996) ................9

*ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1006-7 (2001). ................10

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000)................9

*Desnick v. American Broadcasting Co.* 44 F.3d 1345, 1351-55 (7th Cir. 1995)................15

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 784 (1996)................9

*DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562, 568 (2000)................11

*Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999)................11

*Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988)................15

*Imax Corp. v. Cinema Techs.*, 152 F.3d 1161, 1164-1165 (9th Cir. Cal. 1998)................12

*M.G. v. Time Warner, Inc.*, 89 Cal.App.4th 623, 629 (2001)................9

*Masson v. New Yorker Magazine*, 501 U.S 496, 517 (1991)................11

*Miller v. Nestande*, 192 Cal. App.3d 191, 198 (1987)................11

*Navellier v .Consumer Cause*, 29 Cal. 4th 53, 88 (2002) ................8

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) ................9

*Perfect 10, Inc. v. CC Bill LLC*, 481 F.3d 751, 767-68 (9th Cir. 2007) ................16

*Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 274 (2001)................11

*Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F. Supp. 250, 263 (S.D. Cal. 1958) ................13

*Sipple v. Foundation for Nat. Progress*, 71 Cal.App.4th 226, 230 (1999)................9

*Stolz v. KSFM 102 FM*, 30 Cal.App.4th 195, 202 (1994)................11

*Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir.) (en banc) ....... 11

*Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 397 (2004) ....... 9

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) ....... 10

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) ....... 8

*Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) ....... 12

*Wildmon v. Berwick Universal Pictures*, 803 F. Supp. 1167, 1178 (N.D. Miss.) ....... 15

*Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002 ....... 8

*Zeran v America Online*, 129 F3d 327, 333 (4th Cir. 1999). ....... 16

**Statutes**

Cal Civ Code § 3426.1 ....... 12

California Code of Civil Procedure section 425.16 ....... 1, 10

Communications Decency Act section 230 ....... 2, 7, 16

**Other Authorities**

Rest.3d Unfair Competition, § 39 ....... 13

Joshua Koltun ATTORNEY

TO PLAINTIFF ART OF LIVING FOUNDATION AND ITS COUNSEL OF RECORD: PLEASE TAKE NOTICE that on March 17, 2011, at 11:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom Four of this court, located at 1301 Clay Street, Oakland, defendants Doe/Klim and Doe/Skywalker will specially appear and move the Court under California Code of Civil Procedure section 425.16. for a special order to strike the second, third and fourth causes of action in the Complaint. This motion is based upon the Memorandum of Points and Authorities that follows, on the Motion to Dismiss and Memorandum of Points and Authorities in Support thereof, on the Motion to Quash and the Memorandum of Points and Authorities in Support thereof, Defendants' Request for Judicial Notice and the exhibits thereto, on the Declarations of Doe Klim and Doe Skywalker,[1] all submitted herewith, on all the pleadings, records and files in this case, and on such further material and argument as may be submitted at or before the hearing on this motion.

Defendants Doe/Klim and Doe/Skywalker respectfully request this Court to strike the Defamation, Trade Libel, and Trade Secret causes of action in the Complaint (as to all Doe Defendants), for the reasons stated below, and award reasonable attorney fees..

## *SUMMARY*

This motion to strike incorporates the facts and arguments of the Motion to Dismiss, which should be considered first.

California Code of Civil Procedure section 425.16 ("Section 425.16"), also known as the "anti-SLAPP" statute, is available to litigants in Federal Court as to any claim under California law. Section 425.16 applies where the defendant can show that the challenged speech was made "in connection with an issue of public interest." *Id.* Once a defendant does so, plaintiff must "state and substantiate a legally sufficient claim." Absent such a showing, the court must strike the complaint.

Here the defamation and trade libel claims arise from Defendants statements concerning Ravi Shankar and the numerous organizations he has founded, all of which Defendants contend are part of an abusive and manipulative cult. The disclosures alleged to be of Plaintiff's trade secrets were made

---

[1] Defendants have moved this Court to quash the subpoenas for identifying information and for an order permitting them to proceed pseudonymously, on the grounds that the First Amendment protects their right to speak anonymously here. See Motion to Quash, etc. So as not to prejudice that right, identifying information has been redacted from their Declarations.

Joshua Koltun ATTORNEY

as part of Defendant's efforts to prove these contentions (specifically, to debunk the notion that Ravi Shankar is an enlightened being in possession of mystical "secret knowledge"). For purposes of the "first prong" of section 425.16, the question is not whether Defendants are right or wrong, but rather, whether the issues they are discussing are "of public interest." The issue whether Ravi Shankar and his purportedly charitable/humanitarian organizations are in fact part of an exploitative cult is an issue of public interest.

The burden then shifts to Plaintiff to "state and substantiate" a claim. With regard to the defamation and trade libel claims, obviously if the motion to dismiss is granted, the motion to strike must be granted as well, since Plaintiff has failed to state a claim. But the converse is not true. If the Motion to Dismiss is denied, Plaintiff must "substantiate" its defamation and trade libel claims. In other words, Plaintiff must present a *prima facie* case as to all of the elements of the claims, such as falsity.

Plaintiff must also present a *prima facie* case on its trade secret claims. This Plaintiff cannot do. Plaintiff cannot show that it is in possession of some "trade secret" that is not already known within the Yoga community. Plaintiff does not in fact take reasonable efforts to maintain the secrecy of any of its alleged secrets. Indeed, as the documents Defendants disclosed (which will be filed under seal) demonstrate, the disclosures were in fact entirely innocuous. The vaunted "trade secrets" here are simply a mystical belief-system surrounding the cult of Ravi Shankar. His devotees are free to believe whatever they want, but their religious beliefs cannot create a legally cognizable trade secret claim.

Lastly, Communications Decency Act section 230 creates an immunity for statements that were written by a third party (contrary to traditional libel law). Thus Klim and Skywalker can each only be held liable for the Statements he himself wrote, not for the Statements written by third parties. Under section 230, Klim can only be held liable in defamation/trade libel for some of the Statements on the LAOL Blog, and not for any of the Statements on the BAOL, or for the alleged disclosure of trade secrets. Skywalker cannot be held liable for any of the allegedly defamatory Statements, because he did not write any of them, even the ones posted to his BAOL Blog.

Joshua Koltun ATTORNEY

## *FACTUAL AND PROCEDURAL BACKGROUND*

Defendants incorporate herein the factual background set forth in the Motion to Dismiss. On this Special Motion to Strike, the following factual background is also relevant.

***Facts Relevant to Trade Secret Claims*** Although Sri Sri Ravi Shankar claims to have invented the "Sudarshan Kriya" technique, it is a technique that has long been known in the Yoga community prior to Shankar's purported invention of it. Decl.Klim &SW, ¶ 5. Whether the technique was invented by Shankar or not, the technique is generally known now within the Yoga community and there are also a number of websites teaching the technique. *Id.*; RJN, ¶8 Exh. H.

Indeed, the Complaint itself indicates that "'Sudarshan Kriya' and its accompanying practices, are time-honored stress management and health promotion techniques, the health benefits of which have been established by modern medical science." Complaint at 2:13-14. AOL websites contain descriptions of, and links to "scientific" studies of Sudarshan Kriya. RJN, ¶ 9, Exh I-1. As one study explained, "Sudarshan Kriya (SK) and related practices (SK&P) are derived from the Yogic Science of Breath derived from Vedic texts." RJN, Exh. I3 (Kjellgren) at 3.[2]

These studies themselves describe the technique in some detail. As one explains,

> The central component of SK&P is SK which is an advanced cyclical breathing exercise of slow, medium, and fast rates in succession. Slow breaths are about 20 respiratory cycles per minute, medium breaths are about 40–50 respiratory cycles per minute, and the fast breathing is about 60–80 cycles per minute. The participant rotates through these breathing patterns during SK. Daily home practice of SK takes approximately 10 minutes. During the instruction phase, several longer group sessions of SK, lasting approximately thirty minutes, are practiced.

*Id.* at 3; *see also id*, (further detailed description); *id*, Exh. I2 (Descilo) at p. 5 (also describing technique in great detail.)'

At least one of the authors of some of these "scientific" studies -- Fahri Saatcioglu --is

[2] *See also id*, Exh. I2 at 5 (Descilo); ("Breath Intervention. Breath Water Sound (BWS) and Sudarshan Kriya was taught as an 8-h program given in 2-h sessions over four consecutive days, and included four breathing techniques: three-stage Ujjayi (Victorious Breath), Bhastrika (Bellows Breath), chanting OM and Sudarshan Kriya (SK) (Clear Vision through Purifying Action). ***These ancient yogic practices*** have Sanskrit names. English translations appear in parentheses.)(emphasis added).

affiliated with AOL, and appears to be a devotee of Shankar.[3] He took some pains to explain to fellow devotees the significant disconnect between the “scientific” research regarding Sudarshan Kriya and the religious belief system promulgated by Shankar:

> We are thrilled to be able to support you as you move Guruji’s knowledge and life transforming practices into the academic world. This is an exciting time in Art of Living History: It’s also a time when how we speak about our practices and the scientific research can dramatically determine how receptive or resistant audiences will be to this knowledge.
> …
> We know that there are two legitimate methods for gaining knowledge. The first is the Subjective method of diving deep into one's unshakable Consciousness. This is the way the Rishis and Masters of our tradition have gathered knowledge for thousands of years.
>
> The second method of gaining knowledge is the "Modern" objective method of science. While this method is slower and may ultimately not be able to fathom the deepest truths of creation, it still yields valuable information. It is also the accepted standard of the day. It is therefore important that our statements are consistent with this current objective body of knowledge.
> …
> We have found a great way to speak about prana or any other concept which Sri Sri has taught us that is not part of current medical understanding by simply proceeding it with the following phrase: "According to the Yogic Science of Breath*, it is traditionally understood that ...
>
> For example we could say, ‘according to the Yogic Science of Breath there are four sources of energy.’’
> . . .
> (* a good explanation: The Yogic Science of Breath is a precise science of health promotion through practices that involve the breath. It is over 5000 years old, and perhaps the first Science to recognize the significant relationship between body, mind and emotions.)

Decl.SW, ¶8 & Exh. A. Thus, for example, although “It is commonly stated in intro and other talks that 70 to 90% of the body's impurities (don’t use the word toxin here) can be eliminated through the lungs,” devotees should be aware that “[a]ccording to current scientific understanding of human respiratory physiology, this is not an accurate statement.” *Id.* The guidelines go on to provide talking

---

[3] See RJN, Exh. I3 (Kjellgren), listing Saatcioglu as co-author with his affiliation listed (n.2) as “University of Oslo” and declaring, p.7 that the authors have no “competing interests”) *with* Decl.SW, Exh.A( guidelines for devotees listing Saatcioglu at AOL University).



Joshua Koltun ATTORNEY

points with regard to the question whether Sudarshan Kriya is in fact a form of hyperventilation. *Id.* This question is a topic of some debate on the Blogs. *See, e.g.*, RJN, ¶ 4, Exh. D2 (article: "Sudarshan Kriya: FREEING or FRYING the mind?" and comments thereto).

Although Plaintiff alleges that that the "teaching processes" for Sudarshan Kriya are kept "strictly confidential," Complaint at, e.g., ¶ 41, that is not actually the case; there is no central authority imposing non-disclosure uniform rules. Decl.SW, ¶ 6. For example, students in the UK sign a form under which they agree "I will not ***teach*** any of the techniques of the course ***unless,*** I have been trained in full by SRI SRI RAVI SHANKAR." RJN, ¶ 10 & Exh. J (emphasis added). In other countries, students make no promise regarding confidentiality at all. *Id.*

However, it ***is*** a central tenet of the religious belief system promulgated by Shankar's devotees that the ancient Yogic techniques taught by AOL will only work properly if transmitted under the aegis or blessing of Sri Sri Ravi Shankar. Decl.SW, ¶ 7. As the "SK Notes" explain:

> Therefore these notes should be treated as sacred.
>
> This teaching is sacred and should be given only in a sacred manner. There are four factors in the effectiveness of the technique:
>
> 1. Being an instrument of the teaching: It is Divine Grace that is teaching, not we ourselves;
>
> 2. Your connectedness with the Tradition of Masters, feeling that you are part of the Tradition: the Tradition does not exclude anybody. Within this Tradition, all beings come; all enlightened beings are merged in this Tradition. Therefore it is not in conflict with anything else. This is the Tradition of pure Knowledge, of Being. All great Masters belong here. Not everyone will agree with us. But just as in the ocean all rivers merge, so all great teachers are contained in this Tradition: Buddha, Jesus, Krishna... It is beyond the conception of time;
>
> 3. Your own practice and faith;
> 4. The technique itself: this comes last but it is important.

*Id.*

This set of mystical beliefs regarding the "sacred" transmission of knowledge is what the Complaint is alluding to in its (otherwise obscure) repeated references to the "difficulties" students if they learn the trade secret through unauthorized channels, and to the "dilution and/or tarnishing of Plaintiff's teachings." *See, e.g.*, Complaint, ¶ 35, 46). This belief system rests on the notion that Shankar is a special being who has achieved an enlightened state. Decl. SW, ¶ 7; *compare* Complaint,



Joshua Koltun ATTORNEY

¶ 30 (“The teachings and the mind, body and emotional achievements of Ravi Shankar are a foundational component of Plaintiff’s Art of Living Course.”).

As many commentators have argued on the blogs, it is this set of “magical” beliefs surrounding the (actually well-known) yogic techniques taught by AOL that are what defines AOL as a cult.

It was in this context that Skywalker posted the alleged trade secret documents and the Breath Water Sound Manual).[4] He explained his reasons for doing so as follows:

> The official bullshit explanation is that “higher knowledge” can be dangerous to people who are not yet ready to assimilate it. In their ignorance they will misunderstand it, and it will lead them astray. You need to be properly devoted and humble to the Guru, and of course your “system” needs to be “cleansed”, in order for it to handle the extreme amount of “shakti” that the knowledge contains.
>
> A much more plausible explanation is that the so-called higher knowledge is so absurd that no-one will believe it without some preliminary brainwashing, after which it is handed out in small morsels to the ever-hungry devotee, who gobbles it up, thinking that the Guru’s insane ramblings are the Word of God. Secret Knowledge becomes a way of controlling the devotees.

*RJN*, *Id*, ¶ 5, & Exh. E10.[5]

On August 25, 2010, shortly after Skywalker posted the allegedly trade secret documents ability to post on his BAOL Blog was disabled, and Skywalker received a warning from Wordpress that it had “a concern about some of the content on your blog.” *Id.* Wordpress informed Skywalker that it had “received a valid DMCA Notice,” and that if he believed the copyright claim to be in error

---

[4] *See* Decl.SW, ¶ 9. A post entitled “Sudarshan Kriya Download and Notes,” referred to in the Complaint, ¶100 was posted on June 1, 2010, *id* Exh. B, the Training Guide Phase 1 (*id.* Exh. C) and an article entitled Yes+ Teacher Notes (*id*, Exh. D) referred to in the Complaint, ¶ 99 were posted on July 20, 2010, and the Breath Water Sound Manual was posted on July 21, 2010. *Id.*, Exh.E. Skywalker does not understand what the Complaint is referring to by the term “Continuation Manual.” *Id.* The document entitled “Yes+ Notes is not in fact a manual prepared by AOL but notes a person named "Diego" took of another teacher giving advice on how to best teach the Yes+ course.

[5] See also RJN, Exh. D7 (“Run Forrest”)(“There is a big dramatization around how difficult and secret it is to have that tape, as if it was some Holy Grail. One needs to go thru torturous TTC, where bashing and smashing are part of the payment, thousands of dollars in course fees, followed by endless expenses … following RS for a drop of grace or two.); RJN, Exh. E9 (Can We Help Save, 25th Paragraph [HLT])(criticizing AOL for “magical thinking about the “Kriya Tape” and pointing out that when the tape was uploaded to the internet, he learned that “everything I had been told surrounding the Kriya Tape not working at home if I played it by myself was simply not true ... that all this talk of ‘grace of the guru’ being transmitted through the teacher isn’t true”



Joshua Koltun ATTORNEY

he could follow certain DMCA procedures to do so. *Id.* The "DMCA Notice" to which Wordpress referred was a letter from "Vyakti Vikas Kendra, India" a "registered public charitable trust founded by His Holiness Sri Sri Ravishankar" *Id.*¶ 10 & Exh. 10 ("Notice"). Because Skywalker did not have the resources to consult counsel or challenge to the assertion of copyright, he deleted the Training Guide Phase 1, Yes+ Teacher Notes, and the Breath Water Sound Manual from the BAOL Blog on August 27, 2010 and thereafter has policed the site to prevent the posting of allegedly copyrighted/trade secret materials on the BAOL Blog by third party commenters.[6] He intends to continue to do so pending a determination of his legal rights and obligations. *Id.*

***Facts relevant to the Communications Decency Act, Section 230 Defenses.*** Defendant Klim is the creator of the "Leaving the Art of Living" Blog, hosted on Google's "Blogger" platform (www.artoflivingfree.blogspot.com) ("LAOL"). Decl.Klim, ¶ 2. The Blogger platform enables other persons to author[7] "comments" on the LAOL Blog, and Klim has also posted articles authored by others. *Id.* Klim also has posted articles authored by others, which bear pseudonyms other than "Klim," which were submitted to him for publication on the LAOL Blog.[8] *Id.* Of the specific Statements placed at issue in the Complaint, Doe/Klim is the author only of articles or comments bearing the pseudonyms "Klim," and of the comment bearing the pseudonym "Klim & Co." (although he is not the author of all comments bearing the pseudonym "Klim & Co."). In other words, of statement on the LAOL blog, Klim is only the author of statements A, B, D, E, I, and R but not of comments M, N, or P. *Id.* He is not the author of any of the statements at issue on the BAOL blog. *Id.* Nor did he post any of the allegedly trade secret or copyrighted materials, all of which were

---

[6] Interestingly, although it was not mentioned in the takedown notice, the Breath Water Sound Manual is the only document as to which Plaintiff asserts a copyright cause of action in this lawsuit.

[7] In this brief, Defendants will use the noun/verb "***author***" to refer to the act of providing/person who provides the content (i.e. wrote the words) of a statement on the blog. The term will be used to encompass both persons who directly post comments on a blog without intervention, as well as those who forward a statement/article/comment (i.e. by email) to the blog owner to post. As explained below, the distinction between these two means of "authoring" has no legal relevance to the Section 230 defenses here.

[8] The Blogger software automatically affixes "Posted by AoL Free" to articles that Klim posts to the Blog. *Id.* With respect to the articles and statements at issue here, where an article does not bear a pseudonymous author it was authored by Klim, but where it bears another pseudonym such as JOSH or NICK, it was authored by a third party who forwarded the article to Klim for publication on the Blog.



Joshua Koltun ATTORNEY

posted on the BAOL blog (by Skywalker, see discussion below), not on Klim's LAOL blog. *Id.*

Defendant Skywalker is the creator of the "Beyond the Art of Living" blog on the Wordpress platform hosted by Automattic, Inc. Decl.SW, ¶ 3. The Wordpress platform enables persons other than the creator to comment on the BAOL blog, and enables Skywalker to authorize others to edit or contribute to articles directly. *Id.* Skywalker is ***not*** the author of ***any*** of the allegedly defamatory statements specifically put at issue in the Complaint. *Id.*[9]

## *ARGUMENT*

### I. *The Complaint is Subject to a Special Motion to Strike under § 425.16.*

California's anti-SLAPP statute, which "shall be construed broadly," Sec. 425.16(a), applies where "the defendant has made a threshold showing that the challenged action is one arising from protected activity" enumerated in the statute. Sec. 425.16(e). Once the defendant does so, the Court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Navellier v .Consumer Cause,* 29 Cal. 4th 53, 88 (2002)(internal citations omitted). To meet this burden, the plaintiff must "state and substantiate a legally sufficient claim." *Wilson v. Parker, Covert & Chidester,* 28 Cal. 4th 811, 821 (2002). Absent such a showing, the court must strike the complaint. Sec 425.16(c). Special Motions to Strike under Section 425.16 are available to litigants proceeding in federal court. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999).

#### A. *Defendants Have Met Their Initial Burden of Showing That the Complaint "Arises from …Free Speech … on a Public Issue."*

Defendants have the initial burden of showing that the cause of action against them "aris[es] from" any of their acts "in furtherance of [their] right of petition or free speech … in connection with a public issue." § 425.16(b)(1). The term "act in furtherance of a person's right of petition or free speech… in connection with a public issue" is defined by the statue, and includes:

---

[9] In some cases, an article appears that says "by Skywalker," followed by "by [another person, i.e. "Former AOL Patient."] *See, e.g.,* RJN Exh. __ (The AOL Trance is Broken). In such cases, the "by [another person]" signifies the third-party who authored the article in its entirety and who sent to the article to Skywalker by email for Skywalker to post. *Decl. SW* ¶ 3 Wordpress automatically appended Skywalker's name to the article, even though he did not author it. *Id.*



Joshua Koltun ATTORNEY

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

§ 425.16(e).

An issue may be of "public" concern even though it is of interest only within a private community. *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000). That community may be defined by interests rather than geography. *Annette F. v. Sharon S.*, 119 Cal.App. 4th 1146, 1162 (2004) (gay and lesbian community); *Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 397 (2004) ("the Web site statements concerned matters of public interest in the cat breeding community"). The Court need not decide that an issue is in fact of public significance, so long as some segment of the public is in fact interested in that issue. *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (first prong met where there was "extensive interest" in plaintiff, "a prominent businessman and celebrity of Finnish extraction"—among the Finnish public.")

The question whether a particular organization is a cult, *i.e.* an insular and excessively controlling organization, potentially harmful to its members, is a matter of public interest. *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 650-651 (1996)(allegations that Church inflicted severe emotional injury on him through its religious practices). This is particularly so where an organization is large and has substantial membership and assets, and receives extensive media coverate. *Id.* Statements alleging sexual molestation or other forms of verbal or physical abuse are a matter of public interest. *M.G. v. Time Warner, Inc.*, 89 Cal.App.4th 623, 629 (2001); *Sipple v. Foundation for Nat. Progress*, 71 Cal.App.4th 226, 230 (1999). The question whether money designated for charities is actually received by them is a matter of public interest. *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 784 (1996).

AOL was accredited as a United Nations non-governmental organization and serves as one of the United Nation's largest volunteer NGOS. Complaint, ¶ 19. It "has been praised in the national and international press, including on CNN, MSNBC, and other news outlets. *Id.* ¶ 3. Plaintiff, AOL and Ravi Shankar promote themselves and seek adherents and donations through multiple websites that, among other things, collect and republish numerous articles about themselves that have appeared



Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

in the media. RJN at ¶¶ 2, 3 & Exhs. B & C. If, in fact, Ravi Shankar and his multifarious organizations are a manipulative and abusive cult, and if, in fact, its primary purpose is self-perpetuation rather than the benefit of humanity, that is an issue of public interest. These are precisely the issues raised in the Statements, and these are the issues with which the Blogs are primarily concerned. The disclosure of "trade secrets" as well was inextricably intertwined with Skywalker's efforts to expose and demystify the cult of Ravi Shankar.

All of these issues were discussed on Defendants' blogs, and persons of all viewpoints were invited to submit their own comments. A computer chatroom where members of the public can post their comments is a "public forum" for purposes of section 425.16. *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1006-7 (2001).

Defendants have met their burden of showing that the Complaint arises from "writing made in a place open to the public or a public forum in connection with an issue of public interest." §425.16(e)(3). The burden then shifts to Plaintiff.

## II. *Plaintiff's Defamation, Trade Libel, or Trade Secret Claims Must Be Stricken*

### A. *Plaintiff Must Show That Its Claims Are Legally Sufficient and Supported By Admissible Evidence*

Once, as here, a defendant has met its initial burden of showing that Plaintiff's action is a SLAPP suit, plaintiff must show a "probability of prevailing" on its claim. §425.16 (b). To show a "probability of prevailing on a claim," plaintiff must

> 'demonstrate that the complaint is both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submission of both the plaintiff and the defendant … ; though the court does not ***weigh*** the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1235.

Joshua Koltun ATTORNEY

### B. *If the Motion to Dismiss is Granted on the Defamation and Trade Libel Claims, the Motion to Strike Must Necessarily be Granted, but if the Motion to Strike is Denied, Plaintifs Must Make Further Showings, Such as That the The Statements Were False*

Defendants restate and incorporate herein the arguments made on the Motion to Strike that Plaintiffs have failed to state a legally sufficient claim for defamation or trade libel– specifically, that the statements are absolutely privileged under the Free Exercise Clause, that the statements are not "of and concerning" Plaintiff, that the statements were not actual assertions of fact but rather of opinion, and that the statements were made without actual malice.

If the Court grants the Motion to Dismiss, then it necessarily follows that this Motion to Strike must be granted as well. But the converse is not true: to survive a special motion to strike under section 425.16, plaintiffs must not only state a legally sufficient claim, but substantiate it as well with admissible evidence. *DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562, 568 (2000).

That means that every element of each claim must be substantiated. Thus, for example, if the Court were to determine that any of the challenged statements could reasonably be interpreted as being "of and concerning" Plaintiff, and involving assertions of "provably false" assertions of fact, plaintiffs must substantiate the falsity of the statements, as it is their burden to show falsity. *Miller v. Nestande*, 192 Cal. App.3d 191, 198 (1987); *Stolz v. KSFM 102 FM*, 30 Cal.App.4th 195, 202 (1994). Moreover, a statement cannot be actionable so long as it is ***substantially*** truthful. *Masson v. New Yorker Magazine*, 501 U.S 496, 517 (1991) (a statement is not actionable "as long as the substance, the gist, the sting, of the libelous charge can be justified.); *accord Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999).[10]

---

[10] Plaintiff must also show that any statements actually authored by either Klim or (or the other Doe defendants who actually authored the statements) were made with "actual malice." *See* MTD, section II.E. On a Special Motion to Strike, "actual malice" must be shown by "clear and convincing" evidence. The requirement that actual malice be shown by "clear and convincing" evidence applies in the context of an anti-SLAPP motion to strike. *Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 953 (1996). "The clear and convincing standard requires that the evidence be such as to command the unhesitating assent of every reasonable mind." *Id.* at 950; *accord Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 274 (2001). The Court must consider each allegedly defamatory statement individually in order to determine whether they were made with actual malice. *Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir.) (en banc) ("Defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice in conjunction with a false defamatory statement").

As explained on the Motion to Quash, section II, this Court should order that discovery on issues of "actual malice," including discovery of defendants' identity, be stayed pending Plaintiff's showing that it can survive this motion as to the other elements of its defamation and trade libel claims.

Joshua Koltun ATTORNEY

Plaintiff must also substantiate its claims as to each Defendant. It is not enough to plead in conclusory fashion that statements or disclosures were published on the "Blogs," (Complaint, ¶ 62, 68) whereas in fact each statement was only published on one of the Blogs, and by a particular speaker. The alleged trade secrets were only published on Skywalker's blog, not on Klim's blog.

### *C. Plaintiff Cannot Substantiate a Cognizable Trade Secret Claim*

For its trade secret claims to survive this motion, Plaintiff must show that the disclosures involved its trade secrets. . California law defines a trade secret as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2)Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal Civ Code § 3426.1. As discussed in the sections below, Plaintiff cannot make the requisite showing.

#### *1. Plaintiff Cannot Show That The "Secrets"At Issue Are Not Generally Known Within the Yoga Community*

A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). The plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990); *accord Imax Corp. v. Cinema Techs.*, 152 F.3d 1161, 1164-1165 (9th Cir. Cal. 1998).[11]

Thus Plaintiff must show that Skywalker's disclosures disclosed information were not already known within the Yoga community. This Plaintiff cannot do. Indeed, the techniques at issue have in large part been made public in documents that AOL has itself published and widely disseminated.

---

[11] Since Plaintiff has not identified its trade secret as required by C.C.P. § 2019.210, Defendants reserve the right to supplement their arguments with respect to Plaintiff's Trade Secret claims if and when Plaintiff does so. See Motion to Quash, section III.

Indeed, the Complaint itself concedes that "Defendants posted on their Blogs a link to a written description of Plaintiff's processes for teaching Sudarshan Kriya." Complaint, ¶ 39. Hyperlinking simply amounts to telling another internet user the domain name of a website. Any information that had been disclosed by a third party was, by definition, no longer a secret.

Moreover, a hyperlink is simply a means of informing other internet users of the address of a website. Insofar as Skywalker simply directed his readers to a third party's website where the alleged trade secret was disclosed, Plaintiff has no claim. *See Nissan Motor Co. v. Nissan Computer Co.*, 378 F.3d 1002, 1016-18 (9th Cir. 2004).

Moreover, "what constitutes a sufficient showing of "reasonable particularity" … is flexible enough for the referee or the trial court to achieve a just result depending on the facts, law, and equities of the situation." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005). Here, this Court should consider that the "trade secret" claim here is being used to silence dissidents from a religious organization. As the Complaint explains: "But for Plaintiff's efforts to keep this trade secret information confidential, others could employ Plaintiff's teaching techniques, which would … tarnish Plaintiff's teachings. Misuse of Plaintiff's trade secret materials could cause students not to comprehend Plaintiff's teachings." Complaint, ¶ 95. Plaintiffs must show the actual existence of a true trade secret, as opposed to a set of religious belief that the "knowledge" at issue is "secret" and can only be transmitted by an enlightened master. If the disclose mistakenly believes that he is learning a secret, this does not convert the disclosed information into a trade secret. *See Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F. Supp. 250, 263 (S.D. Cal. 1958); *aff'd* 283 F.2d 695 (9th Cir. 1960) ("In other words, the discloser must treat the recipient of the disclosure equitably. That means that he cannot take advantage of the recipient's ignorance of facts well known or readily ascertainable.")

### *2. Plaintiff Cannot Show That The "Secrets" Have Independent Economic Value*

To be a trade secret, the information must, be "sufficiently valuable and secret to afford an actual or potential economic advantage over others." *Yield Dynamics, Inc. v. TEA Systems Corp.*, 154 Cal. App. 4th 547, 565 (2007)(quoting Rest.3d Unfair Competition, § 39.) "Merely stating that



Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

information was helpful or useful to another person in carrying out a specific activity, or that information of that type may save someone time, does not compel a factfinder to conclude that the particular information at issue" meets that criterion. *Id.* "The fact finder is entitled to expect evidence from which it can form some solid sense of how useful the information is, e.g., how much time, money, or labor it would save, or at least that these savings would be 'more than trivial.'" *Id.*

Moreover, it is not enough for Plaintiff to show that its "secrets" have some economic value – for example that Plaintiff has some technique that is superior to that which is already known in the community. Plaintiff must show that a causal relationship between the secrecy and some economic benefit it derives. *Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996).

Here, Plaintiff cannot rely on its own mystical belief system concerning the value of the "secret" knowledge at issue, but must show that there is an actual independent economic value to any "secret" in its possession, and show that the disclosures by Defendant have destroyed that value.

#### ***3. Plaintiff Cannot Show That It Has Taken Reasonable Efforts to Protect The "Secrets"***

Plaintiff must show that it has taken reasonable measures to protect the trade secrets. It is not enough to show that "general [protective] measures" are taken if those measures are not "designed to protect the disclosure of information." *Buffets, Inc.*, 73 F.3d at 969 (citation omitted). Here, there was no uniformly applied requirement of nondisclosure. Some students agreed only that they would not "teach" the material unless properly trained, not that they would keep the information secret. Others signed no agreement with regard to the contents of the courses whatsoever. It is not relevant if in some instances students-teachers signed nondisclosure agreements, if this was not uniformly done, since a haphazard policy for a "secret" disseminated throughout 140 countries cannot reasonably assure secrecy.

#### ***4. Even if Students Had Signed Nondisclosure Policies, Such Policies Here Would Be Void as Contrary to Public Policy and the First Amendment***

Even if students of the Art of Living Courses had uniformly signed contracts agreeing to keep the contents of those courses confidential, those contracts would be void as against public policy. A professional offering a putatively therapeutic treatment may not prevent the recipients from truthfully

Joshua Koltun ATTORNEY

reporting on what happened in the therapy session. In *Bindrim v. Mitchell*, the defendant signed up for a "group encounter" therapy session. *Id.*, 92 Cal.App.3d 61, 69 (1979), overruled on other grounds, *McCoy v. Hearst Corp.*, 42 Cal.3d 835 (1986) Defendant signed a contract whereby "The participant agrees that he will not take photographs, write articles, or in any manner disclose who has attended the workshop or what has transpired. If he fails to do so he releases all parties from this contract, but remains legally liable for damages sustained by the leaders and participants." *Id.*. Defendant later published a book describing the group encounter sessions. *Id.* Plaintiff sued for libel and breach of contract. *Id.* The Court of Appeal upheld the striking of the contract claim, reasoning that a "professional person can[not], by contract or otherwise, prevent one of his patients from reporting the treatment that patient received." *Id.* at 81. "The limits to her right to report were those involved in the libel counts. Plaintiff has no separate cause of action for the mere reporting." *Id.*

This result is compelled not only by California's public policy but by the First Amendment. Plaintiffs cannot evade the protections of the First Amendment by using the rubric of some tort other than defamation (here, trade secret) to protect their reputations from the damage that will occur if truthful information concerning their practices is disclosed. *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988); *accord Desnick v. American Broadcasting Co.* 44 F.3d 1345, 1351-55 (7th Cir. 1995) (no liability in fraud or trespass for truthfully reporting about eye clinic) At a minimum, First Amendment concerns counsel against construing agreements not to "teach" the contents of Plaintiffs courses as a binding agreement not to disclose them. That is particularly true where, as here, the information is being disclosed not to commercially exploit Plaintiff's "teachings" but rather to criticize and demystify them. *Wildmon v. Berwick Universal Pictures*, 803 F. Supp. 1167, 1178 (N.D. Miss.) *aff'd*, 979 F.2d 209 (5th Cir. 1992) ("unless the contracting parties have clearly promised to limit the flow of information, … an ambiguous contract should be read in a way that allows viewership and encourages debate").

Joshua Koltun ATTORNEY

### *D. Defendants Cannot Be Held Liable for the Statements of Third Parties on Their Blogs, Nor Can Either Be Held Liable for the Statements of the Other.*

Congress "has chosen for policy reasons to immunize from liability for defamatory or obscene speech 'providers and users of interactive computer services' when the defamatory or obscene material is 'provided' by someone else." *Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir. 2003). This immunity is contained in Section 230 of the Communications Decency Act, which provides that "No *provider or user* of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[12] 47 USC § 230(c ) (emphasis added). Congress' purpose was twofold: to encourage "the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce" and to "encourage interactive computer services and users of such services to self-police the Internet for obscenity and other offensive material." *Id.* at 1029*; Zeran v America Online,* 129 F3d 327, 333 (4th Cir. 1999). In *Batzel*, for example, the court held that the moderator of a listserv and operator of a website is immune from liability for posting an allegedly defamatory e-mail authored by a third party and transmitted to them for the purpose of having such email posted. *Id.*, 333 F.3d at 1020.

This immunity extends to ***any*** state law claims arising from the publication on the internet by any "provider or user" of content prepared by a third party. *Perfect 10, Inc. v. CC Bill LLC*, 481 F.3d 751, 767-68 (9th Cir. 2007) (statutory exception for "intellectual property" does not apply to ***any*** state law claims). There is no exception to the immunity on the grounds that plaintiff has put the publisher "on notice" of the wrongfulness of the claim. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 57-58 (2006).

Here, Klim is the "information content provider" for some, but not all, of the statements on his LAOL blog that have been placed at issue in the Complaint. Decl.Klim ¶ 3. Klim can be held liable only for the statements to which he himself provided the content. Skywalker is not the "information content provider" for ***any*** of the defamatory statements at issue on his BAOL blog, and thus cannot be

---

[12] An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *47 U.S.C. § 230(e)(3)*.

Joshua Koltun ATTORNEY

held liable in defamation or trade libel for any of these statements. Decl.SW, ¶ 3. Nor can either Klim or Skywalker be held liable for the statements that the other made.

## *CONCLUSION*

The allegedly defamatory Statements, and Skywalker's disclosure of "the Manuals," were all speech on a "public issue," namely, whether Ravi Shankar's operation is a manipulative cult. This shifts the burden to Plaintiff, who cannot "state and substantiate" its claims of defamation, trade libel, or trade secret. This Court should thus strike these claims, and award Defendants reasonable attorney's fees (which are mandatory under section 425.16(c) to prevailing Defendants) in an amount to be determined at a separate hearing on Defendant's motion.

Dated: January 31, 2011

________\s____________
Joshua Koltun
Attorney for Defendants
Doe Klim and Doe Skywalker